The opinion of the court was delivered by
Fbnnbr, J.
By an act of the General Assembly, No. 81 of 1884, plaintiff was authorized to sue the State of Louisiana for a certain indebtedness alleged to be due under a contract with the State. In accordance therewith he brought his suit and recovered a judgment against the State in March, 1885, which became final without appeal. He alleges that at the session of the General Assembly in 1886 and at the subsequent session in 1888 he applied for an appropriation to satisfy his said judgment by bills for that purpose introduced by members, which said bills were defeated, and that his only remedy for the enforcement of his rights under said judgment is by the exercise of the judicial power.
He avers that the State owns property, rights and credits, which form no part of its annual revenues, derived from taxation for the support of the government, and which are not exempt from seizure and sale, and that he has the right to execute his judgment by seizure and sale thereof under the usual process.
He prays, therefore, that the State be cited through her Governor and that, after due proceedings, there be judgment decreeing that a writ of execution or fieri facias issue on said judgment against the State commanding the seizure and sale of any of her property not forming part of her annual revenues derived from taxation, to an amount sufficient to pay and satisfy said judgment.
The State appeared by counsel and filed an exception of no cause of action, and from a judgment sustaining said exception the plaintiff brings the present appeal.
The learned counsel of plaintiff fully and frankly concedes the principle, now fortunately too firmly established by repeated judicial decisions to admit of further controversy,- that a State of this Union can not, directly or indirectly, be sued by its own citizens, or by the citizens of other States or of foreign nations, either in its own courts or in the Federal courts, without its consent. His contention, as we understand it, is that the State, in this case, has consented to be sued, and that the effect of such consent is to subject the State *931 to the judicial power and jurisdiction, not only for the purpose of entertaining, hearing and deciding the suit, but also for the purpose of executing and enforcing the judgment by the seizure and sale of the property of the State and by applying the proceeds to the satisfaction thereof.
Our answer to this contention is twofold, viz:
1. The consent to execute the judgment rendered by seizure and sale of the property of the State, is not implied by, and does not follow from, the consent given to the suit.
2. If such copsent had been expressly given by the legislative power, it would be unconstitutional, null and void.
I.
Legislative acts authorizing individuals to sue the State upon claims which the Legislature, for any cause, does not see fit to recognize and pay, have been of common occurrence in this and in other States. Their purpose and effect, as commonly understood, are undoubtedly nothing more than to refer to the judiciary the settlement of the questions of law and fact involved in the claims, and the determination, in the form of a judgment, of the rights of the parties. It is implied, as a matter of course, that the legislative power, after making such a reference, will accept and abide by the judicial determination, will recognize the judgment rendered as final and conclusive, and will, in due and ordinary course, make provision for the satisfaction thereof.
That such was the interpretation of his remedy adopted by the plaintiff himself is evinced by his applications to successive General Assemblies for an appropriation to satisfy his judgment.
But to assume that, by consenting to be sued, the Legislature intended to abdicate its constitutional function of controlling and administering the public funds and property and of appropriating them to such lawful purposes as it may deem best, and to delegate to the judicial department the power of seizing such property and applying it to the payment of a particular debt, would be, beyond measure, rash and unjustifiable. No such intention is expressed in the act or can be fairly implied from its terms; and we consider it beyond question that no such ever entered into the mind of any member of the legislative body. The incidents and appurtenances of ordinary jurisdiction have no application to a case like this. Undoubtedly juris *932 diction granted to render judgments between parties subject to judicial power and control implies power to execute such judgments. But the sovereign is not subject to judicial power and control, except just so far as it has consented thereto; the moment the limit of that consent is reached the judiciary must instantly halt. Satisfied as we are that the Legislature has not consented and did not intend to consent to the execution of this judgment by writ of fieri facias, we are bound to deny such remedy.
Counsel asks, of what use is the power to render judgment against the State, if the court is powerless to execute the judgment? That question was anticipated by Mr. Hamilton in the discussion of the Constitution of the United States before its final adoption. ‘ ‘ To what purpose,” he asked, “ would it be to authorize suits against sovereign States for the debts they owe? How could recoveries be enforced? It is evident that it could not be done without waging war against the contracting State.” Federalist No. 81. He never dreamed that authorizing suit against a State would imply the right to issue fieri facias on the judgment.
Puffendorff says: “And if the prince gives the subject leave to enter an action against him in his own courts, the action itself proceeds rather upon natural equity than on municipal laws. For the end of the action is not to compel the prince to observe the contract, but to persuade him.”
In England claims against the Crown might be prosecuted before certain courts in the form of petitions of right, with the consent of the King, but it was held by Lord Mansfield that “ if there were a recovery against the Crown, application must be made to Parliament, and it would come under the head of supplies for the year.” Macbeth vs. Haldimand, 1 Durn. & East, 172.
We have examined all the authorities quoted by counsel and find none of them to support his contention. We are quite certain that no precedent exists sustaining the issuance of a fi. fa. on a judgment against a sovereign State in her own courts, though rendered with her own consent.
The only recourse for satisfaction is by application to the Legislature, with whom the judgment should surely have great persuasive force, but none compulsive.
*933 II.
We are quite satisfied that, if the Legislature had expressly authorized the court to execute this judgment by the issuance of the writ of fl. fa., and the seizure and the sale of the property of the State for its satisfaction, such action would have been unconstitutional, null and void.
Articles 14 and 15 of the Constitution divide the powers of government into three distinct departments, and provide that “no one of these departments, nor any person or collection of persons holding office in any one of them, shall exercise power properly belonging to either of the others.”
The fiscal affairs of the State, the possession, control, administration and disposition of the property, funds and revenues of the State are matters appertaining exclusively to the legislative department. Except in so far as the Constitution itself has appropriated them to particular purposes, the legislative department has exclusive control of them. No debt of the State can be paid without an appropriation, and the Constitution provides the manner in which alone appropriations shall be made. The judicial department is vested with no right or authority over such matters directly or indirectly. If the Legislature, in authorizing the judiciary to entertain suits and render judgments against the State, should add the authority to execute the same by seizure and sale of the State’s property and the application thereof to the payment of the debt recognized by the judgment, it would be delegating to the judicial department powers exclusively vested in the legislative department, in violation of the express prohibition of the Constitution. The giving to the exercise of such powers the form of judicial process would not destroy its essential character. It would still be in effect the exercise of the purely legislative power of disposing of, and appropriating the property and funds of the State to the payment of a particular debt of the State. Such powers the judiciary and all members thereof are prohibited from exercising, with or without the legislative consent.
If the Legislature could delegate such power in one instance, it might refer all public creditors to the courts for satisfaction, and shoulder on the judiciary the whole burden of distributing the State’s property and funds amongst them in a concursus.
We will not further elaborate the subject.
Judgment affirmed.